IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PUTZMEISTER AMERICA INC., | No. C 11-05575 CRB |
|     Plaintiff, | **ORDER GRANTING IN PART MOTION TO DISMISS** |
|     v. | |
| UNITED EQUIPMENT SALES INC, | |
|     Defendant. | |

Plaintiff Putzmeister America ("Putzmeister"), a heavy equipment manufacturer, brought suit in connection with Defendant UES Co.'s use of the domain name "putzmeisterusa.com." See generally FAC (dkt. 23). The Court dismissed Putzmeister's original Complaint for failing to state a claim under the Lanham Act. See Minutes (dkt. 21). Putzmeister filed a First Amended Complaint ("FAC"). See generally FAC. Now before the Court is a Motion to Dismiss the FAC, brought by Defendants Richard Hibbard and UES Co. (collectively, "Defendants"). See generally MTD (dkt. 27). Because the FAC still fails to state a Federal Anti-Cybersquatting Consumer Protection Act (15 U.S.C. § 1125(d), hereinafter "ACPA") claim as to Hibbard, the Court GRANTS the Motion to Dismiss as to that claim only. The Court rejects Defendants' other arguments for dismissal.

//

Case3:11-cv-05575-CRB   Document31   Filed07/05/12   Page2 of 11

## I. BACKGROUND[1]

Putzmeister Holding GmbH ("Putzmeister Holding") is a German corporation that manufactures heavy construction equipment. FAC ¶ 2. Putzmeister is a wholly-owned subsidiary of Putzmeister Holding, and operates a website at "putzmeisteramerica.com." Id. ¶¶ 2, 3. Another of Putzmeister Holding's subsidiaries is the assignee of a valid U.S. federal trademark for PUTZMEISTER. Id. ¶ 22.

UES Co., an Oregon corporation, sold used heavy construction equipment, including Putzmeister equipment. Id. ¶ 8. Hibbard was "an officer, director and controlling shareholder" of UES Co. Id. ¶ 10. His wife was its President. Id. ¶ 9.[2]

On November 17, 2010, "either [UES Co.] or [United Equipment Sales] registered the PUTZMEISTERUSA.COM domain . . . at the direction of [Hibbard]." Id. ¶ 11. It did so by having James Rickman of iHuman Evolution, LLC, register the name through registrar Melbourne IT, Ltd., a company with offices in this district. Id. ¶ 13. When visitors access "putzmeisterusa.com," they are taken to a website belonging to either UES Co. or United Equipment Sales. Id. ¶ 36. The content of that site shows that the owner "is selling used Putzmeister concrete pumping equipment, [and] boom pump equipment." Id.

On May 26, 2011, Plaintiff sent a cease-and-desist letter to "James III" ("a pseudonym [UES Co.] and/or United Equipment used originally to conceal its identity as the registrant") via Melbourne IT. Id. ¶ 39. Defendants did not respond. Id. ¶ 40. On September 26, 2011, Plaintiff sent a cease-and-desist letter directly to United Equipment and Hibbard. Id. ¶ 41. United Equipment and Hibbard responded on October 3, 2011, "admitting that United Equipment authorized the registration of the PUTZMEISTERUSA.COM domain, admitting ownership, control and use of the domain name and advising that United Equipment"

---

[1] For the purposes of this Motion, the facts are presented in the light most favorable to Plaintiff and are drawn from the Complaint and judicially noticeable sources.

[2] Another defendant, United Equipment Sales, Inc. has not appeared, and the Court entered a default judgment against it in February. See dkt. 16. In the Joint Case Management Statement (dkt. 20) ("JCMS") filed February 24, 2012, Hibbard asserted that the website at "putzmeisterusa.com" is operated by UES Company, Inc., not United Equipment Sales, Inc. See JCMS at 2.

2

intended to keep using it. Id. ¶ 42. Hibbard subsequently advised Plaintiff that UES Co., not United Equipment, owns the putzmeisterusa.com domain name. Id. ¶ 43.

On November 16, 2011, Plaintiff filed a Complaint bringing two causes of action, violation of the ACPA, and False Advertising under the Lanham Act (15 U.S.C. § 1125(a)). See generally Compl. (dkt. 1). The Court granted Hibbard's Motion to Dismiss the original Complaint on March 2, 2012, see Minutes, and Plaintiff timely amended, see generally FAC. The FAC now includes six causes of action: (1) violation of the ACPA; (2) False Advertising under the Lanham Act; (3) Federal Trademark Infringement under the Lanham Act (15 U.S.C. § 1114); (4) violation of California Business & Professions Code § 17200; (5) False Advertising under California Business & Professions Code § 17500; and (6) common law Unfair Competition. See generally FAC. UES Co. and Hibbard again move to dismiss. See generally MTD.

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in a complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "Detailed factual allegations" are not required, but the Rule does call for sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949-50. The determination of whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950.

## III. DISCUSSION

Defendants make two main arguments for dismissal: first, that the FAC's formulaic recitation of the elements does not suffice to hold Hibbard liable; and second, that the FAC

3

fails to allege any basis for the Court to exercise subject matter jurisdiction over the state law claims. See generally MTD. The first argument has merit as to one claim only; the second argument has no merit.

### A. Allegations as to Hibbard

#### 1. The ACPA

Count One alleges a violation of the ACPA. FAC ¶¶ 44-50. The ACPA provides for civil liability when (1) a defendant registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to the plaintiff's mark; and (3) the defendant acted with "bad faith intent to profit from that mark." 15 U.S.C. § 1125(d); DSPT Int'l, Inc. v. Nahum, 624 F.3d 1213, 1218-19 (9th Cir. 2010). Importantly, a defendant is only liable for using a domain name if the defendant "is the domain name registrant or that registrant's authorized licensee." 15 U.S.C. § 1125(d)(1)(D).

Plaintiff fails to allege that Hibbard is the registrant of the domain name or that Hibbard is the authorized licensee of the registrant. See Bird v. Parsons, 289 F.3d 865, 881 (6th Cir. 2002) (complaint that did not allege that defendants were the registrant or the registrant's authorized licensee failed to state an ACPA claim). The FAC alleges that "either UES [Co.] or [United Equipment] hired Mr. James Rickman of iHuman Evolution, LLC, an Oregon web content management company, to register the domain name "PUTZMEISTERUSA.COM on behalf of UES [Co.], United Equipment or both." FAC ¶ 13. The FAC also refers to UES Co. and/or United Equipment as taking steps "to conceal its identity as the registrant." Id. ¶ 39.[3] These allegations establish that UES or United Equipment is the registrant, not Hibbard. Nor does Plaintiff ever allege that Hibbard was the authorized licensee of UES Co. or United Equipment. Moreover, Plaintiff's bare allegations that "Hibbard actively and knowingly caused, or acquiesced in and ratified, the wrongful conduct of [UES Co.] and United Equipment" are insufficient to state a plausible claim for

---

[3] Elsewhere in the FAC, Plaintiff alleges that "Use and registration of the PUTZMEISTERUSA.COM domain name by Defendants UES [Co.], United Equipment and Hibbard creates a likelihood of confusion," id. ¶ 48, but, to the extent that this sentence can be read as an allegation that Hibbard registered (rather than simply used) the domain name, it is contradicted by the more specific allegations just cited.

4

relief.[4] See, e.g., id. ¶ 10. The Complaint simply fails to allege that Hibbard, as an individual, "is the domain name registrant or that registrant's authorized licensee." See 15 U.S.C. § 1125(d)(1)(D).

In its Opposition, Plaintiff argues that the ACPA should be construed broadly, and that liability should extend "to persons and entities that were involved in the selection, development, use or maintenance of the infringing domain name." Opp'n at 5. Indeed, the Opposition cites to McKenney & Long, Federal Unfair Competition: Lanham Act 43(a), § 3:38 (2007), for the broad proposition that potential liability under the ACPA "may extend to persons other than the literal 'registrants.'" Id. That source cites to a number of district court cases addressing this issue. See id. n.5.40. However, two of the cases cited held that defendants should be dismissed where they were merely alleged to have "authorized and implemented" the registration or to be the general partner of the registrant, see Fagnelli Plumbing, Inc. v. Gillece Plumbing & Heating, Inc., No. 10-679, 2010 WL 2994163, at *5 (W.D. Pa. July 27, 2010); Fagnelli Plumbing, Inc. v. Gillece Plumbing & Heating, Inc., 10-679, 2011 WL 693349, at *6 (W.D. Pa. Feb. 15, 2011) (remaining defendant registered domain name), and four held that defendants were subject to liability as authorized licensees, see Vulcan Golf, LLC v. Google, 726 F. Supp. 2d 911, 916 (N.D. Ill. 2010) (defendant an authorized licensee if licensing language in contract)[5]; Citadel Inv. Group, LLC v. Citadel

---

[4] Plaintiff urges the Court to assume that all general allegations "embrace whatever specific facts might be necessary to support them." Opp'n (dkt. 28) at 4 (citing Peloza v. Capistrano Unified Sch. Dist., 37 F.3d 517, 521 (9th Cir. 1994)). To the extent that Peloza suggests that general allegations alone are sufficient, it is no longer a correct statement of the law after Twombly and Iqbal. See Sw. Eng'g, Inc. v. Yeoman's Chi. Corp., No. 09-CV-110, 2009 WL 3720374, at *1 n.2 (S.D. Cal. Nov. 3, 2009).

[5] This same footnote in Federal Unfair Competition also cites to Vulcan Golf, LLC v. Goofle, Inc., 552 F. Supp. 2d 752, 763 (N.D. Ill. 2008), in which the court rejected another set of defendants' argument that they should be dismissed because the complaint characterized them as "parking companies" and not as registrants. Those defendants were nonetheless alleged to contract with an advertising service to license and monetize domain names, and the court concluded that it was plausible that such conduct violated the ACPA's prohibition on trafficking. Id. That case is distinguishable from this one, where there are no allegations that Hibbard licenses the domain name at issue, or that he engaged in trafficking. This is important because 15 U.S.C. § 1125(d)(1)(A) provides for liability for one who "registers, traffics in, or uses a domain name," and the limitation in 15 U.S.C. § 1125(d)(1)(D) pertains to one who uses a domain name. See 15 U.S.C. § 1125(d)(1)(D) ("a person shall be liable for using a domain name . . . only if that person is the domain name registrant or that registrant's authorized

United States District Court
For the Northern District of California

Capital Co., 699 F. Supp. 2d 303, 317 (D.D.C. 2010) (defendant admitted to using domain name as registrant's licensee); Hamptons Locations, Inc. v. Rubens, 640 F. Supp. 2d 208, 214 (E.D.N.Y. 2009) ("there was ample testimony by [defendant] himself upon which the jury could have relied to find that [defendant] was the authorized licensee"); Hamptons Locations, Inc. v. Rubens, No. 01-5477, 2005 WL 2436209, at *8 (E.D.N.Y. Sept. 30, 2005) (court granted summary judgment for certain defendants for whom there was no evidence that they participated in registration, did not grant summary judgment for other defendant whom "a reasonable trier of fact could circumstantially infer" was an authorized licensee).

In fact just one case in the lengthy Federal Unfair Competition footnote actually illustrates a court holding liable under the ACPA a defendant who is neither a registrant nor its authorized agent: Full House Productions, Inc. v. Showcase Productions, Inc., No. 05-4602, 2005 WL 3237729, at *2 (N.D. Ill. Nov. 30, 2005). There, two defendants who were alleged to be responsible for associating search key words with the corporate defendant's website moved to dismiss an ACPA claim, arguing that "they are not specifically named as the parties who effected the registration." Id. The court concluded, "While it is true that the complaint refers to [the corporate defendant] as taking this act, we must for purposes of the instant motion make all reasonable inferences in favor of [plaintiff]. It is no stretch of the imagination that the persons responsible for designing [the corporate defendant's] website would also have a hand in registering the domain name associated with it." Id. This single paragraph of analysis is distinguishable, primarily because Full House Productions predates Twombly and Iqbal, and was decided using the lesser pleading standard of Conley v. Gibson, 355 U.S. 41, 45-46 (1957). See id. at *1 (citing Conley). Today's pleadings standards do not allow the Court to stretch its imagination so far. See Iqbal, 129 S. Ct. at 1949-50 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Moreover, in this case, there are not even allegations that Hibbard designed the website.

---

licensee.").

6

1    The only other ACPA authority that Plaintiff points to, in addition to Federal Unfair
2 Competition and Full House Productions, is Flentye v. Kathrein, 485 F. Supp. 2d 903, 914
3 (N.D. Ill. 2007). See Opp'n at 5. In that case, the court rejected a defendant's motion to
4 dismiss an ACPA claim, finding that "Plaintiffs do allege that Defendants as a group
5 registered the domain names at issue" and that "Plaintiffs have made allegations that
6 [defendant] has engaged in a violation of the ACPA as the alter ego of [another defendant],
7 in which case defendant "would be deemed the 'registrant' under the statute." See Flentye,
8 485 F. Supp. 2d at 914-15. This case is distinguishable. First, like Full House Productions, it
9 was decided before Twombly and Iqbal. See id. at 911 (citing Conley). Second, the present
10 case does not include allegations that Hibbard acted as an alter ego of UES Co. Third, the
11 present case does not include allegations that Hibbard registered the domain name at issue.
12 See FAC ¶ 13 (UES Co. or United Equipment registered domain name); id. ¶ 39 (UES Co.
13 and/or United Equipment were "the registrant").[6]

14   Plaintiff also relies on non-ACPA cases for the proposition that a corporate officer can
15 be held liable for acts of trademark infringement if he was the moving force behind the
16 violation. See Opp'n at 6. These cases are inapposite as they do not involve the ACPA's
17 explicit limitation of liability to only "the domain name registrant or that registrant's
18 authorized licensee." See 15 U.S.C. § 1125(d)(1)(D). Thus, in addressing an ACPA claim,
19 D.J. Miller Music Distributors, Inc. v. Strauser, No. 09-897, 2009 WL 3048686, at *3 (M.D.
20 Fla. Sept. 21, 2009) (internal citations omitted), also cited by Plaintiff, see Opp'n at 6, relied
21 on trademark infringement cases holding that "'a corporate officer can be held personally
22 liable for acts of trademark infringement if it is shown that the individual caused such acts to
23 occur.'" That case inexplicably did not consider whether the defendant was a registrant or
24 authorized licensee; such analysis is faulty. Even so, D.J. Miller Music Distributors involved
25 allegations that the defendant "played an active role in transferring registration of [the

---

[6] Again, elsewhere in the FAC Plaintiff alleges that "Use and registration of the PUTZMEISTERUSA.COM domain name by Defendants UES [Co.], United Equipment and Hibbard creates a likelihood of confusion," id. ¶ 48, but, to the extent that this sentence can be read as an allegation that Hibbard registered (rather than simply used) the domain name, it is contradicted by more specific allegations.

7

plaintiff's] domain names without authorization and in bad faith," id., allegations not present here.

Finally, Plaintiff argues in its papers, and argued again at the motion hearing, that it can state a claim against Hibbard because UES Co. failed to provide the requisite notice of dissolution under Oregon Revised Statutes section 60.645, and Hibbard is UES Co.'s controlling shareholder. See Opp'n at 6 (citing FAC ¶ 5). That statute provides: "A claim against a dissolved corporation that is not barred under ORS 60.641 . . . may be enforced . . . (2) if the assets have been distributed in liquidation, against the shareholder of the dissolved corporation to the extent of the shareholder's pro rata share of the claim or the corporate assets distributed to the shareholder in liquidation, whichever is less." The Ninth Circuit applied that statute in Hambleton Brothers Lumber Co. v. Balkin Enterprises, Inc., 397 F.3d 1217 (9th Cir. 2005), which involved the enforcement of a default judgment obtained against a company by recouping shareholder distributions made to the company's former president during dissolution. Here, of course, Plaintiff has not obtained a default judgment against dissolved corporation United Equipment. More important, the FAC fails to allege that any assets have been distributed in liquidation, or that Hibbard has received any assets in liquidation.[7] ORS § 60.645 therefore does not save Plaintiff's claim under the ACPA.

Accordingly, the Court dismisses the ACPA claim against Hibbard.

### 2. The Remaining Counts and "Use in Commerce"

The remaining counts in the FAC involve allegations that Defendants used the domain name at issue in commerce. See FAC ¶ 52 (False Advertising under Lanham Act: "Defendants . . . are using the domain name PUTZMEISTERUSA.COM in U.S. interstate commerce"); ¶ 57 (Trademark Infringement under Lanham Act: "Defendants used and are using in commerce the PUTZMEISTERUSA.COM domain name"); ¶ 63 (UCL: "The aforementioned acts . . ."); ¶ 68 (False Adverting under California Law: "Defendants have

---

[7] Although arguably a distinction without a difference, Plaintiff here has not brought a cause of action under ORS § 60.645, as did the plaintiffs in Hambleton Bros. Lumber Co., 397 F.3d at 1231 (referring to plaintiff's "claim under" ORS § 60.645). Instead Plaintiff references that statute in a section of the FAC describing the parties. See FAC ¶ 5.

8

used, and are using, in commerce the PUTZMEISTERUSA.COM domain name"); and ¶ 76 ("Defendants have used and are using in commerce the PUTZMEISTERUSA.COM domain name"). Defendants argue that all of these counts fail to state a claim, however, because "[t]here are no allegations regarding how Hibbard himself used PutzAmerica's mark," and the FAC instead relies on "the sort of '[t]hreadbare recital[] of the elements of a cause of action' that the Supreme Court held insufficient in Iqbal." See MTD at 6. The allegations of Hibbard's use are slim, but adequate.

The original Complaint included no detail about Hibbard's role other than that he was the "President and owned of UES," Compl. ¶ 5, and that he and UES Co. "are using the domain name PUTZMEISTERUSA.COM in U.S. interstate commerce," id. ¶ 48. Given such allegations, the Court dismissed for failure to state a claim. See Minutes. As cited above, the FAC still includes the conclusory allegations that Hibbard used the domain name in commerce, and that conclusory allegation is still insufficient under Iqbal. See Iqbal, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . .").[8]

But the FAC now also alleges that Hibbard was the "President, Registered Agent and controlling shareholder of United Equipment," FAC ¶ 7, that Hibbard "actively and knowingly caused, or acquiesced in and ratified, the wrongful conduct of Defendants UES and United Equipment," id., that UES and United Equipment registered the domain name at issue "at the direction of" Hibbard, id. ¶¶ 11, 35, and that the domain name in question showed that the owner of the website was selling used Putzmeister equipment, id. ¶ 36, which could confuse customers into believing that there is an affiliation between the website and PutzAmerica, thereby diverting customers from PutzAmerica to the Defendants, id. ¶ 53. This is sufficient.

Plaintiff argues without contradiction that corporate officers, owners or principals can be held personally liable for trademark infringement if they were the "moving active

---

[8] As already discussed, Plaintiff's reliance on Peloza, Opp'n at 7, for the proposition that "all general allegations 'embrace whatever specific facts might be necessary to support them'" is unpersuasive.

9

1 conscious force" behind the violation. See Opp'n at 6 (citing PGC Prop., LLC v.
2 Wainscott/Sagaponack Prop. Owners, Inc., 250 F. Supp. 2d 136, 144 (E.D.N.Y. 2003)); see
3 also Reply (dkt. 29) at 5 ("the plaintiff should be required to allege facts from which it can be
4 plausibly inferred that the individual defendant was the 'moving force' behind the alleged
5 infringement by the corporation, not just that the individual holds the necessary status within
6 the corporation to effectuate such control but that he or she actually did so."). The
7 allegations in the FAC meet this standard.

Accordingly, the Court denies the Motion to Dismiss the remaining counts against Hibbard.

### B. Lack of Subject Matter Jurisdiction

Lastly, Defendants argue that the FAC should be dismissed because it fails to allege a basis for subject matter jurisdiction over the state law claims. See MTD at 6-7. Defendants rely on Civil Local Rule 3-5(a), which provides that "Each complaint . . . must include a separate paragraph entitled 'Jurisdiction.' The paragraph will identify the statutory or other basis for federal jurisdiction and the facts supporting such jurisdiction." See id.

Plaintiff has met this obligation. See FAC ¶ 15 ("JURISDICTION AND VENUE . . . This Court has subject matter jurisdiction over this case pursuant to 15 U.S.C. § 1121, (original jurisdiction over Lanham Act claims), 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338(a) (jurisdiction to adjudicate federal trademark claims)."). What the FAC does not do is go on to say that the Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a). The FAC should have said this for the sake of completeness, but the Court has no question that the FAC's state law claims stem from the same case or controversy as its federal claims; supplemental jurisdiction is proper.

Accordingly, the Court denies the Motion to Dismiss on this ground.

### IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the Motion to Dismiss in part (as to the ACPA count against Hibbard) and DENIES the Motion to Dismiss in part (as to the

//

10

1 //

2 //

3 remaining counts against Hibbard and the jurisdictional argument).

4     **IT IS SO ORDERED.**

5

6 Dated: July 3, 2012



CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

G:\CRBALL\2011\5575\order re MTD FAC.wpd      11